**George Draper et al., Appellants, v. D. S. Petrea, Administrator, Appellee.**

INSTRUCTIONS—*when upon preponderance of evidence erroneous.*
An instruction upon the subject of the preponderance of evidence which calls for the plaintiff to make out his case by a "clear" preponderance of the evidence is improper, but *held,* in this case, that the effect of the use of the word "clear" was to some extent

minimized by the instruction as a whole and that its giving was not ground for reversal.

Contested claim in court of probate. Appeal from the Circuit Court of Washington county; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the February term, 1908. Affirmed. Opinion filed March 4, 1909.

J. A. WATTS, for appellant.

FRANK F. NOLEMAN, VERNOR & VERNOR and W. F. BUNDY, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This suit is based on a claim filed in the Probate Court upon an alleged written contract between appellant's and appellee's intestate. The claim filed is as follows:

ESTATE OF P. J. HOLLEY, deceased,
        To George and Nora Draper, Dr.
To amount due for care and nursing of the
  deceased as per contract.. .. .. .. ...    .$6,000

The alleged contract is as follows:

"THIS AGREEMENT, made and entered into the 18th day of September, 1905, between G. W. Draper and his wife, Nora E. Draper, of the above named township, parties of the first part, and P. J. M. Holley of the same place, party of the second part,

WITNESSETH: THAT for the consideration hereinafter to be stated the said parties of the first part covenant and agree to take care of the said party of the second part during the remainder of his natural life, to furnish him with board, lodging and personal attendance such as his invalid condition may require.

The said G. W. Draper further covenants and agrees to act as agent for the said P. J. M. Holley, to rent his land, to collect the rent therefor, to pay his taxes, to protect as far as possible his timber land from trespass and injury, and to maintain and defend suits at law for that purpose when necessary, to buy and

sell and transact for the said P. J. M. Holley all other business which on account of his physical condition he is unable to transact himself.

IN CONSIDERATION of the services hereinbefore set forth to be performed by the said parties of the first part the said P. J. M. Holley covenants and agrees to pay to the said parties of the first part, jointly, the sum of six thousand dollars ($6,000), the same to be paid out of his estate after his death; and the said P. J. M. Holley further covenants and agrees to make and execute a last will and testament in which he will make express provision for the payment of said debt to the said parties of the first part.

The said P. J. M. Holley further covenants and agrees to act as agent for the said P. J. Holley, to rent five (5) years from the date of this agreement he will at that time make and execute a deed in escrow to the said Nora E. Draper, her heirs and assigns, of his home place, consisting of one hundred and sixty (160) acres of land, and more particularly described as follows: The East half of the Southeast quarter of Section 26, and the West half of the Southwest quarter of Section 25, Township One North, Range Two West of the 3rd P. M., in the first named township and county.

The said P. J. M. Holley further covenants and agrees that if he is living at the expiration of five (5) years from the date of this agreement he will at that time make and execute a deed in escrow to the said G. W. Draper, his heirs and assigns, of forty acres of land, described as follows: The Northwest quarter of the Northeast quarter of Section 25, T. 1 N., R. 2 W. of 3rd P. M., in the above named township and county.

The said P. J. M. Holley covenants and agrees to make provision for the delivery of the said deeds, at his death, to the said parties of the first part, upon their having performed their part of the terms of this agreement, and the said parties of the first part agree to accept the said deeds to the said land as satisfaction in full of the indebtedness of the said P. J. M. Holley under this agreement.

It is further provided and agreed that the sum here-

in provided to be paid to the said Nora E. Draper is not intended and shall not be construed to extinguish any indebtedness of the said P. J. M. Holley to the said Nora E. Draper for services rendered prior to the date of this agreement.

It is further provided and agreed that no gift of personal property or money, nor any payment of any kind for services or labor, made by the said P. J. M. Holley during his lifetime to the said G. W. Draper and Nora E. Draper, or either of them, shall be considered to apply upon the payment of the sum of six thousand dollars provided for in this agreement, unless said payment shall be receipted for upon this agreement as being paid for that purpose.

It is further provided and agreed that the said P. J. M. Holley shall choose his own physician and shall pay his own bills for medicines and medical attendance; and if on account of his sickness he shall require attendance by night as well as by day, and on account of such conditions it becomes necessary or for the best interest of the said P. J. M. Holley to employ additional help in caring for him, in any such case the said P. J. M. Holley agrees to pay for such additional attendance.

The said P. J. M. Holley further covenants and agrees to furnish the said parties of the first part with the use during his lifetime, and until his estate is settled after his death, of his house and premises, including barn and other outbuildings, garden, truck patches, orchard, pasture, and not less than ten (10) acres of cultivatable land.

In testimony whereof witness our hands the day and year first above written.

G. W. Draper,
Nora E. Draper,
P. J. M. Holley."

To this claim appellee filed the general issue, and also a plea of *non est factum* duly sworn to; and the case was transferred by agreement from the Probate Court to the Circuit Court for trial.

Appellants were the son-in-law and the daughter of appellee's intestate. Intestate was an old man, a

widower, and had been an invalid for a number of years. He owned about 340 acres of land, worth something like seven or eight thousand dollars, and a small amount of personal property. He had a number of children besides this daughter Nora, and sometimes one and sometimes another of them had lived with him and taken care of him for a compensation of $100 per year. In August, 1905, appellant George Draper, who up to a few weeks before that date was practically a stranger to intestate, married the daughter Nora, one of appellants, and on the 18th day of September, 1905, the alleged contract purports to have been executed. It is claimed by appellants that on the same date intestate made the following entry in his account book, viz.: "1905—September 18, George and Nora commenced—the five years up 1910, September 18." Appellee contends that this memorandum is not the handwriting of his intestate and denies its genuineness. Intestate died in January, 1907.

During the progress of the trial appellants produced the testimony of a number of witnesses who had some knowledge of intestate's handwriting and who gave it as their opinion that the signature to the contract is the genuine signature of the intestate and that they believed that the memorandum above quoted from his day-book to be in his handwriting; and thereupon the court admitted both the contract and the memorandum in evidence. To rebut this appellee introduced a number of duly qualified witnesses who gave it as their opinion that the signature to the contract is not the genuine signature of the intestate and that the memorandum is not in his handwriting. The testimony of the handwriting witnesses of the respective parties is corroborated to some extent by proof of conversations and conduct of both the intestate and appellants. The testimony with respect to this feature of the case is too voluminous to permit of a detailed discussion of it here. It impresses us as it must have impressed the

jury, that the probative force and weight of it greatly preponderates in favor of appellee.

In addition to the evidence produced with respect to the genuineness of the signature of the intestate to the alleged contract, there was evidence with respect to the care taken of him by appellants during the remainder of his lifetime, as to the state of his mental capacity at the time the alleged contract bears date, as to undue influence on the part of appellants, and as to fraud.

At the conclusion of the trial the court, upon request of appellants, submitted to the jury five special interrogatories, which, with the answers made to them by the jury and returned with their general verdict finding the issues in favor of appellee, are as follows:

"Q. No. 1. Did P. J. M. Holley sign his name to the contract read in evidence?

Answer. No.

Q. No. 2. Did plaintiffs take care of P. J. M. Holley during the remainder of his life and furnish him board, lodging and personal attention?

Answer. Yes.

Q. No. 3. Was P. J. M. Holley at the date of the contract and subsequently, possessed of sufficient mental capacity to transact his ordinary business?

Answer. Yes.

Q. No. 4. Was Holley induced by undue influence to sign the contract sued on?

Answer. No.

Q. No. 5. Was there any fraud or deception practiced on Holley by which he was induced to sign his name to the contract read in evidence?

Answer. No."

It may be properly noted that appellants based their claim wholly upon the alleged contract—they made no claim under the rule of *quantum meruit,* nor did they produce or offer to produce the necessary evidence to support such claim. If they have failed to prove the due execution of the contract by the greater weight of the evidence bearing upon that particular issue,

then, without regard to any and all other questions, their case has failed; and the answers to the special interrogatories eliminate from this appeal all features as to the execution of the contract except the one as to the genuineness of the signature of appellee's intestate.

We do not find any substantial error in the rulings of the trial court with respect to the admission or rejection of evidence.

No complaint is made as to the action of the court in refusing or modifying instructions asked on behalf of appellants, but a number of those given on behalf of appellee are excepted to. We have examined the challenged instructions in the light of counsel's brief and argument, in connection with the evidence and the whole series of instructions, and are of opinion that there is no material error in any of them bearing upon the controlling question in this appeal, except in the third, which is as follows:

"If, after a fair and candid consideration of all the evidence in this case, you find that it preponderates in favor of the defendant, you should return a verdict for the defendant, and if after such consideration of the evidence you find it so evenly balanced that you cannot say upon which side the clear preponderance or greater weight lies, then your verdict should be for the defendant."

We think the use of the word "clear" in this instruction is improper. It is true the following words "or greater weight" tends to make the word "clear" meaningless, and it is also true that in three of the instructions given on behalf of appellants the true rule is correctly and clearly stated. Still, in as much as this instruction authorizes the jury to base their verdict upon it, it cannot be held to be wholly cured. However it has often been held in this state that error will not always warrant a reversal, and to our minds this is a proper case for the application of this rule. As was said in Lenning v. Lenning, 176 Ill. 180, a case

cited by counsel for appellants, in which the trial court had given an instruction containing the same error complained of here, ''We have carefully examined the whole evidence, and are of opinion that it justifies the whole verdict of the jury.''

The judgment of the Circuit Court is affirmed.

*Affirmed.*